**PRUDENTIAL RESOURCES CORPORATION, Appellant,**

v.

**Mack K. PLUNKETT, Appellee.**

Court of Appeals of Kentucky.

June 8, 1979.

Phillip D. Scott, Greenebaum, Doll & Mc-Donald, Lexington, for appellant.

Paul E. Hieronymus, McKee, for appellee.

Before HOGGE, LESTER and VANCE, JJ.

LESTER, Judge.

Prudential Resources Corporation sought a judgment pursuant to KRS 418.005 *et seq.* declaring that it had not lost the right to exercise an option to purchase an oil and gas leasehold held by Mack K. Plunkett. The Jackson Circuit Court dismissed the suit when it determined that Prudential was obligated to comply with a forum selection clause in the agreement between Prudential and Plunkett, which designated Dallas County, Texas, as the site for any litigation concerning the contract. Prudential, in this appeal, urges that we permit resolution of the controversy in the Jackson Circuit Court by either invalidating the forum selection clause as against public policy, or by striking down the clause as unreasonable under the circumstances of this case.

Plunkett, a resident of Dallas, Texas, acquired two oil and gas leases in tracts located in Jackson County, Kentucky. Plunkett entered into the first lease dated March 25, 1977, with William Bond of St. Petersburg, Florida. The notary certificates establish that Bond signed the lease on April 11th in Pindlas County, Florida, while Plunkett added his name on May 10th in Dallas County, Texas. Plunkett obtained the second lease dated August 31, 1977, from the Warford Land Company, a West Virginia Corporation. Plunkett executed the lease before a notary on July 21, 1977, in Dallas County, Texas. The Warford Land Company completed the agreement on July 26th in Cobell County, West Virginia.

By an instrument effective August 15, 1977, Plunkett and Prudential Resources Corporation contracted as to Prudential's operating oil wells on both tracts. This agreement granted Prudential an option to purchase the oil and gas leases upon the condition that Prudential "drilled and completed, or abandoned as a dry hole" eight specified test holes on or before April 15, 1978.

Although Prudential did not meet the contract deadline of April 15th, it still wished to maintain the right to buy the leases through an extension of time to comply with the clause. Prudential, in its complaint, grounded its assertion of entitlement to the additional time upon the allegation that Plunkett had falsely represented that the National Park Service would promptly issue permits allowing Prudential to drill in the Daniel Boone National Forest, and upon the allegation that the harsh winter weather of 1977 and 1978, as well as the park service's delay in granting the permits, brought into effect the force majeure provision of the agreement which states:

In the event PRUDENTIAL shall be rendered unable in whole or in part, by force majeure to carry out any covenant, agreement, obligation or undertaking hereunder to be kept or performed by such party, other than to make payment of amounts due hereunder, such covenant, agreement, obligation or undertaking, insofar as the same shall be affected by such force majeure shall be suspended during the continuance of any inability so caused, and such default shall be remedied with all reasonable dispatch. The term "force majeure" as employed in this paragraph shall be acts of God, (excepting normal or average weather condi-

tions), strike, lockouts, or other industrial disturbances, acts of a public enemy, war, blockades, riots, epidemics, earthquakes, explosions, accidents, or repairs to machinery or pipes, or inability by reason of governmental regulation to obtain materials, acts of public authorities, or other causes, whether or not of the same kind as enumerated herein, not within the control of the party claiming suspension and which by the exercise of due diligence or the payment of money such party is unable to overcome.

Plunkett entered a special appearance for the purpose of objecting to the jurisdiction and venue of the Jackson Circuit Court upon the basis of the following clause in the contract:

> In the event of any dispute, or disagreement, between the parties hereto with respect to this agreement, it is agreed that venue for any action at law brought by any party to this agreement shall be in Dallas County, Texas.

The trial court determined that public policy would not prevent enforcement of a forum selection clause so long as the clause did not operate to force a party into a nonconvenient forum. The court dismissed Prudential's complaint after concluding that Dallas County, Texas, was a convenient forum for both parties.

■ Both Prudential and Plunkett have informed us that no reported Kentucky case has answered whether choice of forum agreements can take effect in this Commonwealth. While we agree that this precise issue remains one of first impression, *Fite & Warmath Construction Co., Inc. v. MYS Corporation,* Ky., 559 S.W.2d 729 (1977), supplies clear guidance on the direction we should take. *Fite, supra,* established that Kentucky public policy does not prohibit enforcement of a contract to submit a future dispute to arbitration. The court in arriving at its opinion on binding arbitration agreements for prospective controversies compared the similar rationale used to invalidate forum selection clauses:

that endorsement of such a clause would oust the courts of jurisdiction. The court rejected the ouster justification in regards to contractual provisions for arbitration by noting that the Supreme Court of the United States in *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), treated arbitration clauses as a subcategory of choice of forum agreements, and by pointing out the position of the American Law Institute on forum selection clauses. We read *Fite, supra,* as mandating adoption of § 80 of the *Restatement (Second) of Conflict of Laws* (1971). Section 80 states:

> The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction but such an agreement will be given effect unless it is unfair or unreasonable.

As the comment to § 80 explains, a court not specified does not lose its jurisdiction as a result of the clause, but such a court declines to exercise its jurisdiction in recognition that the parties by their consent have designated the most convenient forum for their litigation. However, if suit in the selected forum would be unfair or unreasonable, the clause will not be enforced.

■ Although public policy will not void a forum choosing clause, such a provision still must withstand the test of reasonableness.[1] Prudential argues that forcing it to bring its action in Dallas, Texas, would be unreasonable under the circumstances of this case. The primary factors which Prudential has presented to show unreasonableness relate to the difficulty of developing proof outside Kentucky, of the delay of the park service in issuing permits, and of the harsh winter weather conditions of 1977 and 1978. While many of the witnesses who would testify as to the late permits and the weather probably reside in Kentucky, the location of these witnesses would not unduly burden institution of the action in Texas. Weighing the credibility of these witnesses would not be an important aspect

1. For a thoughtful analysis of the various considerations *see* Gilbert, *Choice of Forum Clauses in International and Interstate Contracts,* 65 Ky.L.J. 1 (1976).

of the sort of information that Prudential would hope to elicit from them. Prudential could gather evidence as to the closing of roads and as to why it took a certain amount of time to receive a permit, by deposition, without incurring any disadvantage because the witnesses did not appear personally. A Texas court can accord Prudential an effective remedy.

Prudential does not undergo any inconvenience by appearing in the courts of Texas. Prudential has an office in Houston. Another portion of the contract stated that "[f]or purposes of this agreement, payments to be made, notices to be given and material to be supplied shall be addressed, or delivered" to either Prudential at its Houston office or to Plunkett at his Dallas address. All correspondence between Plunkett and Prudential was to take place in Texas. It would work a greater hardship on Plunkett for him to have to defend the suit in Kentucky than for Prudential to live up to its bargain and file proceedings in Dallas. We have no doubt that a Texas court will have the expertise to interpret an oil and gas contract.

We do not have a situation here of overreaching by Plunkett. Prudential engaged in the business of extracting oil and gas. Plunkett dealt with Prudential at arms length from Dallas and they entered into a sophisticated drilling contract. We see no disparity of bargaining power. Prudential, at the time it executed the contract, expressed its approval of Dallas as a site to litigate any contract controversy, although it must have realized that an event which might trigger the force majeure clause would in all likelihood occur in Kentucky. Prudential has not supplied us with an adequate explanation as to why it should escape its promise as to the appropriate forum when it had knowledge all along that a legal dispute might center on facts which happened in Kentucky. *Fite, supra,* at 735.

Finally, we observe that Kentucky has a minimal interest in this lawsuit. Assuming that Kentucky had a substantial interest to protect because of its having the most significant relationship to the transaction and the parties, the Jackson Circuit Court would have been warranted in refusing to enforce the forum selection agreement if the application of Texas law would have subverted an important policy of Kentucky and if the choice of law rule of Texas would have been in favor of its own laws. *See Lewis v. American Family Ins. Group,* Ky., 555 S.W.2d 579 (1977). However, here, nonresidents entered into a contract out of state for the purpose of removing resources in Kentucky. Prudential does do business in Kentucky, but we can perceive no interest unique to Kentucky at stake which the courts of this Commonwealth can better protect. Basically, the question involves whether Prudential should get an extension of its option to purchase because of occurrences which excuse its not meeting the drilling deadline. We are confident that Prudential can get a fair hearing in Dallas, Texas.

The judgment is affirmed.

All concur.