**MEDICAL LEGAL CONSULTING SERVICE, INC., etc.**

v.

**Linda COVARRUBIAS, etc., et al.**

**Civ. No. K–86–1100.**

United States District Court, D. Maryland.

Sept. 30, 1986.

Delmer C. Gowing, III, and May, Gowin, Mosher & Simpson, Bloomfield Hills, Mich.,

and Brian E. Barkley, Rockville, Md., for plaintiff.

Albert D. Brault, Janet S. Zigler, and Brault, Graham, Scott & Brault, Rockville, Md., for defendants.

FRANK A. KAUFMAN, Senior District Judge.

Plaintiff, Medical Legal Consulting Service, Inc. (MLCS), a corporation incorporated, and with its principal place of business, in Maryland provides technical consulting services to clients concerning trial and settlement of medical malpractice suits which its clients institute against third parties. Defendants, Linda Covarrubias and Phillip Lugo, legal guardians for Jason Lugo, their son, are both citizens of California and reside in California. Accordingly, diversity jurisdiction exists in this case.

Plaintiff and defendants entered into a relatively simple four page printed contract, apparently a form contract used by plaintiff, which plaintiff submitted to defendants and to defendants' attorney, Peter McNulty, Esq. Defendants and Mr. McNulty signed the contract in California and returned it to plaintiff who then signed it in Maryland.

Plaintiff instituted the within suit in the Circuit Court for Montgomery County, Maryland pursuant to a forum selection clause in the said contract. Plaintiff claims that defendants breached the contract by failing to pay to plaintiff 10% of the settlement proceeds of $1,975,000 which defendants had received in connection with a medical malpractice suit brought by them against White Memorial Medical Center in a court seemingly located in California, concerning alleged injuries of their son in California.

Defendants removed the within action from the Circuit Court for Montgomery County, Maryland to this Court, stating, in a Memorandum filed in this Court, that if "they are successful [in resisting plaintiff's motion to remand], a motion to transfer this case to the appropriate federal court in California will be filed pursuant to Title 28, Section 1404(c) of the United States Code."

Opposition to Plaintiff's Motion to Remand, p. 7, filed June 16, 1986. Thereafter, plaintiff moved to remand this case to the Circuit Court for Montgomery County, Maryland, relying upon the forum selection clause. Plaintiff also seeks "[c]osts for the improper removal ... in an amount sufficient to pay [plaintiff] for its attorneys fees.... Plaintiff suggests One Thousand Five Hundred ($1,500) Dollars as costs to be assessed for the wrongful removal." Plaintiff's Motion to Remand, p. 2, filed May 15, 1986.

## FORUM SELECTION

The forum selection provision at issue in this case reads as follows:

All parties to this contract agree and acknowledge that this Contract for Corporate Services is ratified in and will be governed, interpreted and construed in accordance with the substantive and procedural laws of the State of Maryland. All parties to this contract further agree and acknowledge that the court of competent jurisdiction for any dispute arising out of or related to this contract is the Circuit Court of Montgomery County, State of Maryland.

The attorney for defendants signed his name below the following statement at the end of the printed contract:

MLCS expects ATTORNEY to assume certain responsibilities to MLCS which in no way conflict with the duties owed to CLIENT.

But for the forum selection clause, defendants' removal action would be appropriate, pursuant to 28 U.S.C. § 1441, since the parties are citizens of different states and the amount in controversy is more than $10,000. The remand motion accordingly turns entirely upon the validity and the enforceability of the forum selection clause.

In *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court set forth what has been labelled as the "modern view" regarding forum selection clauses.

15 Wright, Miller & Cooper, Federal Practice and Procedure § 3803.1, at 19 (1986). In that case, Chief Justice Burger concluded that, in "federal district courts sitting in admiralty", forum selection "clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances", *id.* at 10, 92 S.Ct. at 1913, or the resisting party who "bear[s] a heavy burden of proof", *id.* at 17, 92 S.Ct. at 1917, can establish that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching", or "if enforcement would contravene a strong public policy of the forum in which suit is brought...." *Id.* at 15, 92 S.Ct. at 1916. In *Bremen,* the Chief Justice further wrote:

> Courts have also suggested that a forum clause, even though it is freely bargained for and contravenes no important public policy of the forum, may nevertheless be "unreasonable" and unenforceable if the chosen forum is *seriously* inconvenient for the trial of the action. Of course, where it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable.

*Id.* at 16, 92 S.Ct. at 1916 (emphasis in original).

*Bremen* itself involved an international forum selection agreement. However, its principles have been held equally applicable to domestic forum selection cases and to forum selection clauses generally. *See e.g., Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corp.,* 696 F.2d 315 (4th Cir.1982). *See generally* 15 Wright, Miller & Cooper, *supra* n. 11 at 20.

In the within case defendants stress that they signed the contract in California; they reside in California; their severely injured child lives in California with the mother, who has three other minor children; all of the witnesses except the MLCS witnesses live in California; and while defendants' case against the hospital has been settled, their case against a doctor, presumably pending in a court located in California, is still outstanding. Seemingly, the contract between plaintiff and defendants relates to that suit as well as the settled action against the hospital. Defendants also point to the fact that plaintiff is a corporation whose business extends throughout the country and that plaintiff should be prepared to maintain litigation nationwide.

However, plaintiff is entitled to the benefit of its bargain which includes the forum selection clause and which enables plaintiff to avoid litigation all over the country. Indeed, the essential purpose of a forum selection clause is usually to protect a party such as plaintiff herein from "having to litigate in distant forums all over the nation. It is clear that such provisions should be enforced when invoked by the party for whose benefit they are intended." *Fury v. First National Monetary Corp.,* 602 F.Supp. 6, 9 (W.D.Okla.1984) (citations omitted).

Defendants assert that the within litigation should take place in a court in California since the prior malpractice lawsuit against the hospital was brought and maintained in California. Defendants state that they have never been to Maryland, have no contacts with the State of Maryland, and should not have to defend a lawsuit in the within forum. However, the record herein indicates that the contract itself was accepted in Maryland by plaintiff and that negotiations between the parties and the sharing of information by the parties regarding the malpractice case against the hospital occurred by phone or by mail between Maryland and California. Further, plaintiff contends that the only witnesses in the within case are MLCS's officers and employees, defendants and their attorney Mr. McNulty. However, neither that latter contention by plaintiff nor what is apparently an opposite factual claim by defendants has been factually established in the within litigation.

In *D'Antuono v. CHH Computax Systems, Inc.*, 570 F.Supp. 708 (D.R.I.1983), the District Court wrote:

> *Post-Bremen*, the federal courts have synthesized and refined the rule, and have looked to a variety of factors in applying the *Bremen* yardstick of reasonableness.

Nine factors which have been considered for purposes of determining whether a given forum selection provision is reasonable are:

1. The identity of the law which governs the construction of the contract. *See, e.g., Furbee v. Vantage Press, Inc.*, 464 F.2d 835, 837 (D.C.Cir.1972).

2. The place of execution of the contract(s). *See, e.g., Leasewell, Ltd. v. Jake Shelton Ford, Inc.*, 423 F.Supp. 1011, 1015–16 (S.D.W.Va.1976).

3. The place where the transactions have been or are to be performed. *Id.* *See also Kline v. Kawai America Corp.*, 498 F.Supp. at 872.

4. The availability of remedies in the designated forum. *See, e.g., Hoffman v. Burroughs Corp.*, at 549; *Full-Sight Contact Lens Corp. v. Soft Lens, [sic] Inc.*, 466 F.Supp. at 73.

5. The public policy of the initial forum state (here, Rhode Island), *see, e.g., Hoffman v. Burroughs Corp.* at 549; *Cutter v. Scott & Fetzer Co.*, 510 F.Supp. at 908, a consideration perhaps uniquely applicable where, as here, federal jurisdiction is bottomed on diversity of citizenship.

6. The location of the parties, the convenience of prospective witnesses, and the accessibility of evidence. *See, e.g., Anastasi Brothers Corp. v. St. Paul Fire & Marine Insurance Co.*, 519 F.Supp. 862, 864 (E.D.Pa.1981).

7. The relative bargaining power of the parties and the circumstances surrounding their dealings. *See, e.g., Plum Tree, Inc. v. Stockment*, 488 F.2d at 757.

8. The presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances. *See, e.g., Cutter v. Scott & Fetzer Co.*, 510 F.Supp. at 907.

9. The conduct of the parties. *See, e.g., Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. at 73; *Gaskin v. Stumm Handel GmbH*, 390 F.Supp. 361, 365 (S.D.N.Y.1975).

While each of these factors has some degree of relevance and some claim to weight, there are no hard-and-fast rules, no precise formulae. The totality of the circumstances, measured in the interests of justice, will—and should—ultimately control. In the end, the party seeking to avoid the strictures of the forum selection clause must convince the court of the reality of "a set of qualitative factual circumstances warranting denial of enforcement." *Kolendo v. Jerell, Inc.*, 489 F.Supp. at 985.

*Id.* 570 F.Supp. at 712 (emphasis in original).

■ In the within case, the contract specifies that Maryland law governs.[1] Maryland was the place where the contract was finalized. Although certain of the contractual undertakings were performed in California, many took place in Maryland. There is no suggestion that the Circuit Court for Montgomery County, Maryland is not ready to provide remedies to both sides in this case similar to those available in California, or that California and Maryland have any different views based upon public policy or anything else which will cause this case to turn on principles of

---

**1.** In a diversity case such as the one at bar, a federal court must apply the choice of law rules of the forum state to determine the applicable substantive law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1947). Maryland conflicts-of-law principles teach that the law of the state in which the last act necessary for the formation of the con-tract takes place governs. *Haines v. St. Paul Fire and Marine Insurance Company*, 428 F.Supp. 435, 437 (D.Md.1977); *Chesapeake & Potomac Telephone Co. of Md. v. Allegheny Construction Co.*, 340 F.Supp. 734, 740 (D.Md.1972). Thus, even if the within contract itself did not so specifically provide, Maryland law would apply.

substantive law which are dissimilar in the two states.

 Defendants claim that California is the most convenient forum because defendants' injured son resides there, it would be a hardship for defendants to leave their son in California while they journey to Maryland for trial, and witnesses and parties to the malpractice case are in California.

Plaintiff asserts that Maryland, where plaintiff's principal place of business is located, is the most convenient forum, and that defendants, "by consenting to inclusion of the forum designation in the agreements, [have] in effect subordinated [their] convenience to the bargain." *D'Antuono*, 570 F.Supp. at 713. (Citations omitted). Even though defendants may have to travel to Maryland for trial in the selected forum, "such a journey was apparently within the contemplation of the parties when the bargain was struck. 'Plaintiff [here defendants] can not be heard to complain about inconveniences resulting from an agreement freely entered into.'" *Id.* (*quoting Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71, 74 (S.D. N.Y.1978)).

In this case, the Circuit Court for Montgomery County has in no way been shown to be a forum "seriously" inconvenient for the trial of the within action. The level of "serious inconvenience" discussed in *Bremen* and its progeny must be such that the party seeking to escape his contract "will for all practical purposes be deprived of his day in court." *Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917. In *L.F.C. Lessors, Inc. v. Pearson*, 585 F.Supp. 1362 (D.Mass. 1984), Chief Judge Caffrey held that the added time and expense of litigating in Massachusetts a contract "negotiated, entered into and performed in Utah", and the problems caused because "all witnesses for either party are located in Utah", fell short of the level of inconvenience and unreasonableness required to render unenforceable a forum selection clause of the contract, specifying that suit should be brought in Massachusetts. In that case, Judge Caffrey, noted that such inconvenience would not support dismissal of the case before him, although it would be relevant to a motion to transfer "to a district court in Utah." *Id.* at 1365.

There is no suggestion in the record in this case that defendants were not free to contract with companies other than plaintiff to provide the same or similar services—perhaps with a company located in California or closer to California than Maryland—or with a company which did not include a forum selection clause in its contracts. As to the relative bargaining power of the parties, while plaintiff, a corporation whose standard form contract was used, may have had some advantage regarding the parties' bargaining skills, the contract is only four pages in length, and is readable and apparently understandable by most lay persons. In addition, defendants' lawyer signed the contract and seemingly read it. An adjustment was made in the contract by changing the contingency fee from 15% to 10% if the litigation in connection with which plaintiff provided its services to defendants should be settled. Accordingly, it is reasonable to assume defendants were advised by their lawyer concerning the terms of the contract. But even if defendants, when they executed the agreement, did not know of the forum selection clause, "one", as Justice Cardozo observed more than 60 years ago, "'who omits to read takes the risk of omission.'" *D'Antuono*, 570 F.Supp. at 714 (*quoting Murray v. Cunard S.S. Co., Ltd.*, 235 N.Y. 162, 166, 139 N.E. 226, 228 (1923)).

Forum selection clauses have been found to be "unreasonable" and therefore have not been enforced when the selected forum is one with which neither party to the contract had a connection, or when the forum selection clause has not been deemed to be a vital part of the agreement, or when the forum selection clause was ambiguous and did not specifically identify any jurisdiction, or when the litigation would be carried on in a foreign language in a foreign court when all prior activities had been in English, or when the resisting party had significantly inferior bargaining power. *See* 15

Wright, Miller & Cooper, *supra*, § 3803 n. 24 at 23–24. Since none of those or any other "unreasonable" situations exist in the present case, the forum selection clause should not be ignored and should and will be enforced. Accordingly, this Court will today enter an Order granting the Motion to Remand.

### COSTS AND ATTORNEYS' FEES

There remains for disposition plaintiff's claim for $1,500 for attorneys' fees allegedly wrongfully incurred by plaintiff due to defendants' improper removal of this case to this Court. 28 U.S.C. § 1446(d) provides:

> Each petition for removal of a civil action or proceeding, except a petition in behalf of the United States, shall be accompanied by a bond with good and sufficient surety conditioned that the defendant or defendants will pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed.

28 U.S.C. § 1447(c) states, in relevant part:

> If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of *just costs*.

(Emphasis supplied). Thus, "if remand is ordered, the federal court may assess 'just costs' against the bond filed with the removal petition." 14 Wright, Miller & Cooper, *supra*, § 3739 at 586 (1985).

■ In *Dunkin Donuts of America v. Family Enterprises, Inc.*, 381 F.Supp. 371 (D.Md.1974), Judge Young ordered that court costs of the proceeding before the district court be paid by defendant to plaintiff because defendant was a citizen of Maryland, suit had been brought in a Maryland state court and there was no basis for a claim of removal based on diversity of citizenship, since 28 U.S.C. " '1441(b) provides that a civil action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.' " *Id.* at 372. In that context Judge Young determined that "[i]n light of the fact that lack of jurisdiction was obvious from the face of the petition, the Court feels warranted in ordering the payment by the defendant to the plaintiff of the costs of the proceeding before this Court." *Id.* at 373. While, in this case, the basis for removal may not be as weak as in *Dunkin Donuts*, nevertheless it appears sufficiently weak so as to cause this Court to require defendants to bear the costs of this case in this Court and to enforce that "award ... against the bond filed with the removal petition." 14 Wright, Miller & Cooper, *supra*, 3739 at 586 (footnote omitted).[2] However, plaintiff's quest for attorneys' fees raises a different question.

■ In 14 Wright, Miller & Cooper, *supra*, § 3739 at 587–88, the authors have written:

> It would be desirable in some cases to tax the removing parties with an attorney's fee on the motion to remand, but an amendment of the statute probably is necessary to provide the courts with authority to do so, particularly in light of an important Supreme Court decision limiting the authority of the federal courts to award attorney's fees.[40]
>
> [40] Supreme Court decision—*Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 1975, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141.

(Footnote 39 omitted). In *Grinnell Brothers, Inc. v. Touche Ross & Co.*, 655 F.2d 725 (6th Cir.1981), Judge Phillips wrote: "As a general rule, but with certain exceptions, a federal court may not award attorneys fees to the prevailing party." *Id.* at 726. In *Schmidt v. National Organiza-*

---

2. The award of costs pursuant to 28 U.S.C. § 1447(c) is not automatic. In *Capitol Cake Co. v. Lloyd's Underwriters,* 453 F.Supp. 1156, 1161 (D.Md.1978), Judge Miller held that when the question of removability was "close and novel", an award of costs would be improper. However, plaintiff need not demonstrate that the defendant acted in bad faith in order to recover costs. *Cornwall v. Robinson,* 654 F.2d 685, 687 (10th Cir.1981).

*tion for Women,* 562 F.Supp. 210 (N.D.Fla. 1983), the Court wrote:

> In seeking a remand of this action to the state court, plaintiffs have also requested this court to award attorney's fees incurred by the plaintiffs by reason of the improper removal of this case to federal court. Generally, absent an authorizing statute or enforceable contract, litigants are required to pay their own attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 257–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). The plaintiffs cite no statute or contract and presumably rely upon the limited exception to the general rule governing the award of attorney's fees where a party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " Id.; *see Macdiarmid v. Lawbar Petroleum,* 456 F.Supp. 503, 505 (W.D.Tex.1978); *see also Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973) (quoting 6 *Moore's Federal Practice* ¶ 54.77[2] at 1709 (2d ed. 1972)). An award of attorney's fees under the bad faith exception to the general rule "is punitive, and the penalty can be imposed 'only in exceptional cases and for dominating reasons of justice' ". *United States v. Standard Oil Co.,* 603 F.2d 100, 103 (9th Cir.1979) (quoting 6 *Moore's Federal Practice* ¶ 54.77[2] at 1709–10 (2d ed. 1972)); *see Cornwall v. Robinson,* 654 F.2d 685, 687 (10th Cir. 1981). As a result, "[i]nvocation of the bad faith exception to the normal federal rule that attorney's fees may not be recovered requires more than a showing of a weak or legally inadequate case". *Americana Industries, Inc. v. Wometco de Puerto Rico, Inc.,* 556 F.2d 625, 628 (1st Cir.1979). This court agrees with the Tenth Circuit Court of Appeals which recently noted that "[t]hese considerations highlight the narrowness of the exception.... The exception is not invoked by findings of negligence, frivolity, or improvidence". *Cornwall v. Robinson, supra,* at 687.

*Id.* 562 F.Supp. at 214–15.

In *Cornwall v. Robinson,* 654 F.2d 685 (10th Cir.1981), the Tenth Circuit wrote:

The trial court found, with adequate support in the record, that "[t]his case was removed improvidently and frivolously because it was obvious that this Court was fully without removal jurisdiction of this action either on federal question grounds or on diversity grounds." Record, vol. 1, at 146. The court awarded attorney's fees in the amount of $6,000.

We have said that a trial court which awards attorney's fees under the "bad faith, vexatious, wanton, or oppressive" exception to the American rule "will be reversed only in circumstances which do not show a reasonable ground for the conclusion that vexatiousness existed." *Ryan v. Hatfield,* 578 F.2d 275, 277 (10th Cir.1978). Yet here we do not even have a finding of vexatiousness. Notwithstanding a request by plaintiffs to find bad faith, the trial court found only that "removal of this action was improvident and frivolous." Record, vol. 1, at 147. Although "a case can be so frivolous as to reflect impermissible conduct," *Americana Industries, Inc. v. Wometco de Puerto Rico, Inc.,* 556 F.2d 625, 628 (1st Cir.1977), the trial court did not indicate that its interpretation of frivolous was to be equated with the intent-laden terminology of "bad faith, vexatious, wanton, or oppressive." In fact, the trial court seemed to be advocating a negligence standard for the award of attorney's fees when it interpreted "frivolous" at the hearing: "I have come to the conclusion that the commencement of this proceeding in this court was frivolous in that if counsel had carefully reviewed the applicable law counsel would have known that this court would not have jurisdiction." Record, vol. 4, at 31.

*Id.* at 687.

The within case involves a forum selection clause—a contractual provision which is not automatically enforceable and which is not binding if enforcement would be "unreasonable under the circumstances." In this case, there is no suggestion that

defendants have sought removal to delay or harass. *Cf. McLaughlin v. Western Casualty and Surety Co.*, 105 F.R.D. 624, 626–27 (S.D.Ala.1985). Accordingly, in the context of the record in this case, court costs but not attorneys' fees will be awarded to plaintiffs. *Cf. Moore v. Bishop*, 520 F.Supp. 1187, 1188 (D.S.C.1981).

An Order is today being entered in this case remanding the within case to the Circuit Court for Montgomery County, Maryland, awarding court costs to plaintiff, and denying plaintiff's quest for an award of attorneys' fees.