Roger **WILDER,** Individually and d/b/a R. Wilder Sales; Roger Wilder and Dennis Kelley, Individually and d/b/a R & D Midwest Pet Supply, Appellants,

v.

**ABSORPTION CORPORATION,** Real Party in Interest,

and

Hon. Joseph Bamberger, Judge Boone Circuit Court, Appellees.

No. 2002–SC–0338–MR.

Supreme Court of Kentucky.

June 12, 2003.

Marc Douglas Dietz and Dennis R. Williams, Adams, Stepner, Woltermann & Dusing, Covington, Counsel for Appellants.

Joseph E. Conley, Jr., Buechel, Conley & Schutzman, Covington, Counsel for Appellee Absorption Corporation.

Joseph Bamberger, Boone County Circuit Judge, Burlington, Counsel for Appellee Hon. Joseph Bamberger.

## OPINION

WINTERSHEIMER, Justice.

This appeal is from an order of the Court of Appeals granting a writ of mandamus which directs the Boone circuit judge to vacate his May 29, 2001 order which had allowed the claim by Wilder and Kelley against Absorption Corporation to be submitted to binding arbitration in this Commonwealth.

The questions presented are whether the arbitration/choice of forum clause in this contract is unreasonable; whether mandamus is the proper means to review factual determinations made by the circuit judge; whether the circuit judge correctly found that enforcement of the arbitration/choice of forum clause would result in manifest injustice; and whether arbitration held in the Commonwealth of Kentucky pursuant to a court order may be enforced by the courts of Kentucky.

A long procedural history has brought this case to this point. It includes two separate appeals and two opinions from the Court of Appeals.

Absorption Corporation is a Nevada corporation with its principal place of business located in Washington state. It operates throughout the nation selling several lines of consumer products among which are a line of speciality pet care products, including several types of cat litter. In July 1993, Absorption entered into a written sales representative agreement with Roger Wilder, d/b/a R. Wilder Sales. Un-

der the terms of the agreement, Wilder was to sell Absorption's products to pet supply stores in Michigan, Indiana, Ohio and Kentucky. Wilder's brother-in-law, Dennis Kelley, joined him and became a sales representative for Absorption. Together, Wilder and Kelley formed a business entity called R & D Midwest Pet Supplies. Both men worked out of their homes in Boone County. After the sales territory was established, Absorption terminated the contract with Wilder and Kelley in 1995 and began selling directly from its Washington state location into the territory previously served by the two sales representatives.

In 1995, Wilder and Kelley filed suit against Absorption in circuit court claiming breach of oral contracts, breach of the written agreement, fraud and misrepresentation and unfair trade practices. Absorption Corporation moved to dismiss the claim based on an arbitration/choice of forum clause which allegedly required all disputes to be submitted to arbitration in the state of Washington. The circuit judge denied the motion. Several years into the litigation, Absorption Corporation filed a renewed motion to compel arbitration. On April 30, 1998, the circuit judge denied that motion as well, holding that the arbitration/choice of forum clause in the contract was unreasonable and unenforceable and ordered the parties to proceed in circuit court.

In the first appeal by Absorption Corporation, a panel of the Court of Appeals reversed the April 30, 1998 order of the circuit judge and remanded for an application of the test set forth in *Prudential Resources Corp. v. Plunkett*, Ky.App., 583 S.W.2d 97 (1979). See *Absorption Corp. v. Wilder*, 1998–CA–1358–MR. Neither party sought discretionary review from this Court.

On remand, the circuit judge referred the matter to a Master Commissioner who conducted an evidentiary hearing as directed by the Court of Appeals and considered the four factors in *Plunkett, supra,* concerning the enforcement of a forum selection clause. Those factors are: 1) whether the clause was freely negotiated; 2) whether the specific forum is a seriously inconvenient place for trial; 3) whether enforcement would contravene a strong public policy of the forum in which the suit is brought; and 4) whether Kentucky has more than a minimal interest in the lawsuit.

The Master also considered, as directed by the Court of Appeals, that it was necessary to evaluate the convenience of the parties and witnesses. In doing so, he carefully reviewed the choice of forum by Wilder and Kelley; the situs of the material events; the relative ease of access to sources of proof; the convenience of the witnesses; and the convenience of the parties litigating in the respective forums.

The Master found that Absorption is a publicly held corporation organized under the laws of the state of Nevada, with its principal place of business located in Bellingham, Washington; that Wilder and Kelley were sales representatives for a pet bedding product produced by Absorption; that a lengthy negotiation ensued from 1990 until 1993 between the parties; that the final product of the negotiations was a contract dated April 1, 1993, with the contract ultimately completed by July 28, 1993; that the contract was signed by Wilder only after Absorption advised him that if he failed to sign that Absorption would get someone else as their representative; and that the final contract contained a choice of forum clause and arbitration provision which is the subject of this action.

Following the requirements of *Plunkett*, the Master determined that the choice of forum clause was freely negotiated and that the enforcement of it does not contravene the public policy of Kentucky; that Kentucky had more than a minimal interest in the action insofar as it involved two of its citizens and that a majority of the customers, who are key witnesses, are residents; and that Kentucky had the most significant relationship to the transactions in this case. He reported to the circuit judge that litigation in the state of Washington would be the "death knoll" of the plaintiff's action.

On May 29, 2001, the circuit judge confirmed the report of the Master Commissioner that enforcement of a choice of forum clause in this case would result in manifest injustice to Wilder and Kelley and this consideration outweighs the agreement of the parties to accept arbitration in the state of Washington. He ordered that the claim by Wilder and Kelley be submitted to binding arbitration within the Commonwealth of Kentucky.

In the second appeal by Absorption Corporation, a different panel of the Court of Appeals granted the requested writ of mandamus. It determined that Absorption Corporation had demonstrated its entitlement to a review on the merits because no appeal could adequately redress the loss of its contractually bargained for right to arbitrate all disputes concerning the contract in the state of Washington. The Court of Appeals found that the parties were bound by the clear and legitimate provisions of the arbitration/choice of forum clause in their agreement. Accordingly, it directed the circuit judge to vacate his order entered on May 29, 2001. This appeal followed.

■ Wilder and Kelley argue that the arbitration clause in the contract is unreasonable and enforcement would result in manifest injustice. They ask this Court to reverse and set aside the decision of the Court of Appeals and allow the underlying action to proceed to arbitration as ordered by the circuit court. In the alternative, they request the arbitration clause be invalidated in total and that we remand this case to the circuit court so that it may proceed under the Kentucky Rules of Civil Procedure. Wilder and Kelley contend that mandamus is not proper for the review of a circuit court's factual determination. They also claim that the circuit court correctly found that it would be a manifest injustice for them to travel to the state of Washington to litigate or arbitrate. Finally, Wilder and Kelley ask this Court to review the question of whether an arbitration held in the state of Kentucky pursuant to a court order may be enforced by the courts of Kentucky.

Absorption Corporation responds that a decision refusing to enforce a forum selection clause is reviewable by original action because effective review cannot be obtained by appeal from a final judgment. It asserts that arbitration in the state of Washington is not inconvenient unless it would effectively deny the plaintiffs their day in court. Absorption maintains that the alleged inconveniences to the plaintiffs and the witnesses are not sufficient reasons to invalidate the contractual choice of forum or arbitration clauses. It contends that the choice of forum and arbitration provisions were not the result of overreaching or boilerplate terms. Absorption argues that the plaintiffs claim of fraud is no excuse to enforceability of a forum selection clause.

■ After considering the arguments of both parties, we must conclude that the Court of Appeals erred in granting the writ of mandamus sought by Absorption Corporation. For purposes of this opinion we treat writs of mandamus and writs of

185

prohibition in the same manner. A writ of mandamus is an extraordinary remedy, one which should not be issued lightly. *University of Louisville v. Shake,* Ky., 5 S.W.3d 107 (1999). Such a remedy will be granted only upon a showing that: 1) the lower court is proceeding or is about to proceed outside its jurisdiction and there is no adequate remedy by appeal, or 2) the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result. *Kentucky Labor Cabinet v. Graham,* Ky., 43 S.W.3d 247 (2001).

The requirement of showing that there is no adequate remedy by appeal emphasizes that a writ is an extraordinary remedy used to shield a party from injustice, against which there is no other adequate remedy and to preserve the ordinary administration of the laws. *Ohio River Contract Co. v. Gordon,* 170 Ky. 412, 186 S.W. 178 (1916), aff'd, 244 U.S. 68, 37 S.Ct. 599, 61 L.Ed. 997 (1917). It has not at any time been held that mandamus will issue in every instance and on every occasion merely because the court is allegedly proceeding out of its jurisdiction. Ordinarily when a court is proceeding out of its jurisdiction, there exists an ample and adequate remedy by appeal. In such cases the writ has been denied.

We disagree with the conclusion reached by the Court of Appeals that Absorption Corporation does not have an adequate remedy by appeal. Even if the circuit court is operating outside of its jurisdiction, the moving party is still not entitled to the remedy of a writ absent a showing that it has no adequate remedy by appeal from an unfavorable ruling. *Graham, supra.* Here, no such showing has been made and the reason stated by the Court of Appeals is insufficient.

■ The decision of the circuit judge in upholding the report of the Master Commissioner was correct insofar as it held that enforcement of the arbitration clause would produce a manifest injustice and would result in an inconvenience of forum so serious as to deprive Wilder and Kelley of their opportunity for a day in court. The choice of forum clause presented an impossible situation.

The evidentiary hearing held by the Master involved live testimony from witnesses and although Absorption was not present at the hearing, they were ably represented by local counsel. The Court appointed Master Commissioner is an experienced and competent attorney. Further trial of this matter would only be redundant. The Court of Appeals was incorrect in disturbing the findings of fact as presented to the circuit judge and endorsed by him.

The inconvenience and unreasonableness of the choice of forum clause results in a manifest injustice, and this consideration is greater than the contractual agreement to accept arbitration in the state of Washington.

The decision of the Court of Appeals is reversed and the order of the trial judge is reinstated. The litigation shall be submitted to binding arbitration within the Commonwealth of Kentucky.

Graves, Johnstone and Stumbo, J.J. concur. Lambert, C.J., dissents without opinion. Cooper, J., dissents by separate opinion. Keller, J., dissents and would affirm the Court of Appeals in accordance with the legal analysis contained in Justice Cooper's dissenting opinion, but does not join that opinion because he disagrees with dicta contained therein that ascribes improper motivations to those who have reached different legal conclusions.

COOPER, Justice, Dissenting.

## I. Forum–Selection Clause.

Appellants Roger Wilder and Dennis Kelley are residents of Boone County, Kentucky. Appellee Absorption Corporation is a Nevada corporation whose principal place of business is in Bellingham, Washington. Wilder's principal and long-time occupation is that of a manufacturer's representative in the automotive aftermarket business. Operating as "d/b/a R. Wilder Sales," he is an agent for various automotive parts manufacturers, selling their products to automotive garages and retail parts distributors within the general area of Kentucky, Indiana, and Ohio. He is no stranger to agency relationships or agency contracts, admitting, "I had reviewed a number of contracts and had some contracts with some of the manufacturers that I represented." In fact, during his negotiations with Absorption with respect to the contract at issue in this case, Wilder sent Absorption's representatives a standard form automotive agency contract as a guide to use in drafting the agency contract in question.

In 1990, while attending an automotive trade show in Chicago, Illinois, Wilder noticed and became interested in two oil absorbent products manufactured by Absorption and marketed under the brand names of "Absorbent GP" and "Absorbent W." Wilder thought he could sell these products to automotive garages as clean-up agents. Because "Absorbent W" will absorb spilled oil or gasoline without also absorbing the water with which the oil or gasoline might become mixed, he also thought he could sell that product to entities such as fire departments that clean up hazardous spills. He also noticed Absorption's advertisement of a new "cat litter" product known as "CareFRESH" that both absorbs and deodorizes liquid waste. Wilder approached Absorption's represen-

tative at the trade show about selling their oil absorption products and was ultimately given an agency contract to sell those products in his existing territory of Kentucky, Indiana, and Ohio.

In 1991, Wilder formed a separate company, R & D Midwest Pet Supply, with his brother-in-law, Dennis Kelley, and began negotiations to obtain an agency agreement with Absorption to sell "CareFRESH." Negotiations over the contract continued for almost two years while Wilder and Kelley "pioneered" the product at pet shops and veterinary offices in Kentucky, Indiana, and Ohio. At one point during the negotiations, Wilder requested that Absorption award him the entire sales territory east of the Mississippi River. Ultimately he was granted a territory consisting of Kentucky, Indiana, Ohio, and Michigan. The final 24–page contract was forwarded to Wilder by Absorption in March, 1993. After making some interlinear alterations, Wilder signed the contract on March 30, 1993, and returned it to Absorption. On July 12, 1993, after further interlineations, Absorption's operations manager, Douglas Ellis, signed the contract on behalf of Absorption and returned it to Wilder for approval of the changes. Wilder signed the contract again on July 28, 1993, and returned it to Absorption as a completed contract. Wilder also initialed every page of the contract, including pages 12 and 13, which contain paragraphs 14 and 15, *viz:*

## 14. ARBITRATION PROVISION

In the event of any disagreement or differences between the parties arising out of or in connection with this Agreement, each party agrees that if such disagreement or difference cannot be amicably settled, such disagreement will be referred to arbitration in Bellingham, Washington, in accordance with the

rules in effect of the American Arbitration Association.

## 15. CHOICE OF LAW AND CHOICE OF FORUM

A. This Agreement and the relative rights and duties of the parties hereto shall be interpreted in accordance with the laws of the State of Washington without regard to Washington's choice of law rules. Any dispute between the parties hereto arising in whole or in part as a consequence of the execution of this Agreement, shall also be governed by the law of the State of Washington without regard to Washington's choice of law rules.

B. Without limiting in any way the duties of the parties to arbitrate any disagreement of differences, the parties hereby agree that all litigation between them arising in whole or in part out of this Agreement, or in whole or in part as a consequence of the execution of this Agreement, shall be brought in the courts of the County of Whatcom, State of Washington. REPRESENTATIVE [Wilder] hereby consents to personal jurisdiction before such courts. Provided, however, that an action or ancillary proceedings to enforce a judgement [sic] obtained by a party in the said Washington court may be in any appropriate forum.

This was no adhesion contract. Wilder negotiated numerous provisions during the two years of negotiations. For example, at Wilder's request, Absorption amended the contract to include a termination provision, to grant him "exclusive" territorial rights, and to delete a provision that would

have required him to travel to Bellingham, Washington, upon request, to attend sales meetings and consultations. In contrast, Wilder did not request that paragraphs 14 and 15 be altered or deleted. Nor did he claim in the complaint filed in the underlying action that he was fraudulently induced to accept the arbitration and forum-selection provisions.

Not surprisingly, the trial court found that "[t]he choice of forum clause was freely negotiated between the parties," and that "[e]nforcement of the choice of forum clause does not contravene the strong public policy of the Commonwealth of Kentucky." Remarkably, however, the trial court then concluded (and the majority of this Court now agrees) that to require Wilder to abide by a "freely negotiated" provision that "does not contravene the strong public policy" of this Commonwealth would result in "manifest injustice." No reason for such a conclusion is offered other than that Wilder and Kelley[1] and some of their witnesses are residents of Kentucky. Of course, Absorption's officials and all of its witnesses are residents of Washington. No doubt, one side of this litigation is going to be inconvenienced no matter which forum is selected. Absorption and Wilder resolved this issue between themselves by agreeing that any litigation over this contract would be conducted in the state of Washington. It hardly rings of "manifest injustice" to enforce a forum-selection clause to which Wilder agreed during lengthy and arms-length negotiations. *See Med. Legal Consulting Serv., Inc. v. Covarrubias,* 648 F.Supp. 153, 155 (D.Md.1986) ("plaintiff is

---

1. Although Kelley participated in some of the contract negotiations, neither he nor "R & B Midwest Pet Supply" is a party to the contract. Kelley did not sign the contract and neither he nor R & B is mentioned anywhere in the contract. The only entities identified as parties to the contract are Absorption Corporation and "R. Wilder Sales." The only signatories were Ellis, who signed on behalf of Absorption, and Wilder, who signed as "Roger V. Wilder, Pres., R. Wilder Sales."

entitled to the benefit of its bargain which includes the forum-selection clause and which enables plaintiff to avoid litigation all over the country.").

In *Prezocki v. Bullock Garages, Inc.*, Ky., 938 S.W.2d 888 (1997), we adopted the test stated in Section 80 of the Restatement (Second) of Conflict of Laws (A.L.I. 1971):

> The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction but such an agreement will be given effect unless it is unfair or unreasonable.

938 S.W.2d at 889; *see also Prudential Resources Corp. v. Plunkett*, Ky.App., 583 S.W.2d 97, 98–99 (1979). The issue is not whether it would be inconvenient for Wilder to litigate his case in Washington but whether it is "unfair or unreasonable" to require him to do so. Thus, the majority's failure to justify a finding that the forum-selection clause here is "unfair" or "unreasonable" is baffling.

Remember, it was Wilder who approached Absorption in Chicago desiring an agency relationship. Wilder knew that Absorption's home office was in Bellingham, Washington, and signed a contract agreeing that any litigation over the contract would be conducted in Washington. While it may be inconvenient for him to do so, Wilder was aware of that potential inconvenience when he negotiated and signed the contract. Inconvenience does not equate with unfairness and unreasonableness. From Absorption's point of view, the clause is both fair and reasonable, and being required to litigate in Kentucky is just as inconvenient for it as litigating in Washington would be for Wilder. While Wilder may have signed the contract in Kentucky, Absorption's officer, Ellis, signed it in Washington. Also worrisome is the specter of Wilder serving notice on Absorption to produce for deposition in Kentucky all of its employees who were involved in the contract negotiations or who are alleged to have participated in the breach. *Compare Gevedon v. Grigsby*, Ky., 303 S.W.2d 282, 283–84 (1957).

In upholding a contractual provision selecting England as the forum for litigation between two international shipping companies, the United States Supreme Court recognized the heavy burden of proof placed on the party seeking to avoid a forum-selection clause:

> The correct approach would have been to enforce the forum clause specifically unless Zapata could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.
>
> . . .
>
> We are not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum. In such a case, the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause. The remoteness of the forum might suggest that the agreement was an adhesive one, or that the parties did not have the particular controversy in mind when they made their agreement; yet even there the party claiming should bear a heavy burden of proof.
>
> . . .
>
> [I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

*Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 17–18, 92 S.Ct. 1907, 1916–17, 32 L.Ed.2d 513 (1972).

The trial court's finding in the underlying action that to enforce the forum-selection provision would be the "death knoll" of this litigation is a gross exaggeration. Is it because Absorption is located in Washington as opposed to, *e.g.*, Michigan? Would Colorado be too far away? Texas? The fact is that in this age of rapid air transit it is simplistic to suggest that any forum in the continental United States is so far away as to constitute a "death knoll" for someone who truly wishes to litigate a valid claim. *Cf. Panavision Int'l. L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) ("[I]n this era of fax machines and discount air travel requiring [an Illinois resident] to litigate in California is not constitutionally unreasonable.") (quotation omitted).

The Court of Appeals for the Second Circuit undertook an extensive analysis of this issue in *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7 (2d Cir.1995). *Effron* enforced a forum-selection clause in a contract requiring an American plaintiff to litigate her claim in Greece. *Id.* at 10–11. In so holding, it rejected the plaintiff's claim that she would be "effectively deprive[d]" of "her day in court" by being required to litigate in Greece. *Id.* at 11.

> Although appellee would prefer the relative comfort of a court in New York or Florida, she agreed to have her claim adjudicated in Greece. This agreement should not be negated unilaterally by plaintiff's conclusory assertions that she cannot afford to travel to Greece, that she would be afraid to stay at a strange city, that she does not know any Greek lawyers, etc. Unsupported statements such as these do not meet the "heavy burden of proof" required to set aside a

forum-selection clause on the ground of inconvenience.

*Id. See also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 539, 115 S.Ct. 2322, 2329, 132 L.Ed.2d 462 (1995) (enforcing forum-selection clause that required Massachusetts plaintiff to arbitrate in Japan); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991) (enforcing forum-selection clause that required residents of state of Washington to litigate in Florida).

Here, Wilder sought employment with a corporation knowing that its corporate headquarters were in Washington. He freely signed an employment contract knowing that it required any contractual disputes to be resolved in Washington. As the United States Supreme Court observed in *Shute, supra*, the forum-selection clause also likely allowed Wilder to secure better terms, "reflecting the savings that [Absorption] enjoys by limiting the fora in which it may be sued." *Id.* at 594, 111 S.Ct. at 1527. Wilder negotiated other terms of the contract, and chose to leave this term intact. His only claim is that it would be more convenient to litigate in his own "back yard." Incredibly, only a few short months after the rendition of our unanimous opinion in *Kentucky Farm Bureau Mutual Insurance Co. v. Henshaw*, Ky., 95 S.W.3d 866, 868 (2003) ("As the contract established the relationship between the parties, and as there is a probability that it will influence any subsequent litigation, enforcement of the choice-of-venue clause is not unreasonable."), the majority of this Court is going to let him get away with it. I can only conclude that Absorption has just tasted some good old-fashioned Kentucky "home cookin'."

## II. No Adequate Remedy.

As held by the Court of Appeals, "no appeal could adequately redress the loss of

[Absorption's] contractually bargained-for right to arbitrate all disputes pertaining to the parties' contract in the state of Washington." Court of Appeals slip op., at 5. If Absorption cannot seek relief from the trial court's action by way of a petition for a writ, then it has no remedy at all. It can never recover the cost and inconvenience of arbitrating in Kentucky even if an appellate court should later determine that the matter should have been arbitrated in Washington. *See Bridgestone/Firestone v. McQueen,* Ky.App., 3 S.W.3d 366, 367 (1999) ("The relevance of arbitration and the right to invoke it would be rendered essentially meaningless or moot if a party were required to go first through the time and expense of litigation being then entitled to appellate review—which may or may not determine that arbitration should indeed have been granted in lieu of litigation.").

As the Court of Appeals also noted, the outcome of arbitration in Kentucky may well be an award that no Kentucky court would have the jurisdiction to confirm because Kentucky was not the contractually chosen situs for the arbitration. KRS 417.200 ("The making of an agreement described in KRS 417.050 providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this chapter and to enter judgment on an award thereunder."); *Tru Green Corp. v. Sampson,* Ky.App., 802 S.W.2d 951, 952 (1991) ("The plain meaning of that statute is that the agreement, wherever made, must provide for the *arbitration itself* to be in the Commonwealth in order to confer subject matter jurisdiction on a Kentucky court") (emphasis in original); *see also Artrip v. Samons Constr., Inc.,* Ky.App., 54 S.W.3d 169 (2001).

Also needing attention is the standard of review applicable in the first instance when a court is petitioned to grant a writ of prohibition or mandamus to a lower adjudicatory body. The decision to grant or deny the petition is committed to the sound discretion of the court. *Southeastern United Medigroup, Inc. v. Hughes,* Ky., 952 S.W.2d 195, 199 (1997). I conclude that the Court of Appeals did not abuse its discretion in issuing the writ requiring the trial court to dismiss the underlying action.

Accordingly, I dissent.