TANGLEWOOD LAND COMPANY, INC. v. C. L. BYRD AND WIFE, KATHLEEN N. BYRD

No. 89

(Filed 1 February 1980)

1. **Courts § 21.7— contract made in Virginia—Virginia law controlling**

   The laws of Virginia governed the validity of an executory contract for the sale of land since the contract was executed in Virginia and since the contract itself provided that the laws of that state should be controlling.

2. **Vendor and Purchaser § 1— right to mortgage premises retained by seller—contract not unconscionable—contract supported by consideration**

   In an action to recover the balance due on a note and contract for the purchase of land, the contract was not unconscionable and unsupported by valid consideration because, pursuant to the terms of the contract, plaintiff seller reserved the right to convey its interest in the land in question and to mortgage the premises, since plaintiff's contractual obligation to execute a special warranty deed upon defendant purchasers' final installment payment provided sufficient mutuality of obligation to prevent the contract from being unconscionable and provided sufficient consideration to constitute a valid contract.

3. **Vendor and Purchaser § 1— contract to convey voided by prior sale—contract not illusory**

   A land sales contract was not illusory because it provided that "Buyer agrees that in the event of prior sale of said lot(s), this agreement and note shall be cancelled and voided without further liability to either party, except for refund of all payments made hereunder," since such "prior sale" referred to a contract to sell consummated, or a sale consummated, between the seller and another purchaser with reference to the same tract of land prior to the signing of the subject contract, and both seller and purchaser were protected by this provision in the event one of plaintiff's salesmen sold the lot in question to another purchaser unbeknownst to the salesman selling it to defendant.

   Justice CARLTON took no part in the consideration or decision of this case.

   Justice COPELAND dissenting.

   Justice HUSKINS joins in the dissenting opinion.

APPEAL by defendants to review an opinion of the Court of Appeals by *Judge Hedrick* with *Judge Vaughn* concurring and *Judge Arnold* dissenting. 42 N.C. App. 251, 256 S.E. 2d 270 (1979). Defendants appealed as a matter of right under G.S. 7A-30(2).

Plaintiff is a Virginia corporation with its principal place of business located at Bracey, Virginia. Defendants are residents of Wake County, North Carolina. The land involved in this lawsuit is

Land Co. v. Byrd

located in Mecklenburg County, Virginia, and known as Lot No. 42E, in the Eagle Village of River Ridge Golf and Camping Club.

On 5 May 1974 plaintiff and defendants entered into an executory contract for the sale of said Lot No. 42E by plaintiff to defendants, and defendants executed their promissory note to plaintiff for the purchase price of said lot payable in equal monthly installments. The total deferred balance on the note, including finance charges, was $8,100.00 payable at the rate of $135.25 per month for 60 consecutive months commencing on 19 June 1974 [the final monthly payment being in the amount of $120.25]. The contract and the note show on their face that they were executed at Bracey, Virginia. The contract provided that upon payment in full of the note by defendants the plaintiff would convey the lot to defendants by a Special Warranty Deed.

Defendants made regular monthly payments on the note and contract until 6 November 1974 after which defendants have paid nothing. On 19 November 1976 plaintiff instituted this action to recover the balance due on the note and contract. A copy of the note and contract was attached to and incorporated in the amended complaint which was filed 31 May 1977.

Defendants answered the amended complaint admitting the execution of the note and contract, and admitting that they had made no payments since 6 November 1974. Defendants denied that they had defaulted in the payment of the note and denied that plaintiff had demanded payment. By their first defense defendants seek dismissal under Rule 12(b) on the grounds that the amended complaint fails to state a claim upon which relief can be granted.

By order filed 3 August 1978 in Superior Court, Wake County, plaintiff's action was dismissed ". . . for reason that it appears upon the face of the contract upon which this suit is based, a copy of which contract is incorporated in the complaint, is unconscionable, and there is a failure of consideration to support the plaintiff's claims . . . ." Plaintiff appealed to the Court of Appeals.

By opinion filed 3 July 1979 (42 N.C. App. 251, 256 S.E. 2d 270 (1979)) the Court of Appeals reversed the dismissal and remanded the case to the Superior Court for further proceedings.

Land Co. v. Byrd

*Mast, Tew, Nall & Moore, by Allen R. Tew for plaintiff-appellee.*

*Gulley, Barrow & Boxley, by Jack P. Gulley for defendant-appellants.*

BROCK, Justice.

[1] We note first that this contract was executed in Virginia, and that the interpretation of a contract is governed by the law of the place where the contract was made. *Bundy v. Commercial Credit Corporation*, 200 N.C. 511, 516, 157 S.E. 860, 863 (1931); *Fast v. Gulley*, 271 N.C. 208, 155 S.E. 2d 507 (1967). Secondly, the contract on its face provides that in construing the contract the laws of the Commonwealth of Virginia shall be controlling. This Court has held that where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect. Thus by the provisions of this contact, the law of the Commonwealth of Virginia governs our determiantion of its validity. *Tennessee Carolina Transpotation, Inc. v. Strick Corporation*, 283 N.C. 423, 431, 196 S.E. 2d 711, 716 (1973), *later app.*, 286 N.C. 235, 210 S.E. 2d 181 (1974).

[2] Defendants argue to this Court that the land sales contract is on its face unconscionable, illusory and not supported by valid consideration as it is in effect totally one sided in favor of the plaintiff Tanglewood Land Company. Defendants rely first on paragraph 12 of the land sales contract which provides as follows:

¶12 "Seller reserves the right to convey its interest in the above described premises and its conveyances thereof shall not be a cause for recision. Buyer expressly consents that Seller and its grantees and/or assigns may mortgage said premises and the rights of Seller and Buyer shall be subordinate to the lien of all such mortgages, whether the same shall be given hereinbefore or hereinafter."

It is defendant-appellants' contention that in light of this paragraph they as purchasers could make all payments under the terms of the contract, and receive no interest in the property in return for such payments. Defendant-appellants argue that plaintiff-appellee could have placed a mortgage in any amount on the property and its rights in the property would be subordinate

to such a mortgage by the terms of the contract. For the reasons that follow we disagree and hold that the contract is supported by valid consideration and is not unconscionable on its face.

We turn first to the question of the contract's unconscionability. Paragraph 4 of the land sales contract provides that seller retains title to the property as a security interest until receipt of all payments from the buyer. Upon such receipt seller shall "deliver a conveyance of said lot(s) to Buyer consisting of a SPECIAL WARRANTY DEED . . . ." The code of Virginia, Section 55-69, defines a covenant of special warranty as one where: "the grantor has covenanted that he, his heirs and personal representatives will forever warrant and defend such property unto the grantee . . . against the claims and demands of the grantor, and all persons claiming or to claim by, through or under him." *See also Pic Construction Company, Inc. v. First Union National Bank, et al.,* 218 Va. 915, 919, 241 S.E. 2d 804, 806 (1978).

Reading paragraph 12 of the contract in light of paragraph 4 it is apparent that plaintiff has retained the right to encumber title to the property so long as it holds said title as security, however upon defendants' final payment plaintiff is contractually obligated to provide defendants with unencumbered title to the property and defend such title against all of those claiming through them as grantors.

If plaintiff acts in good faith and should be unable for good cause to provide clear title as warranted, the defendants as purchasers may bring suit for specific performance or for nominal damages with return of all monies paid with interest. However, if plaintiff as vendor has acted in bad faith in originally undertaking to convey title, or has voluntarily disabled itself from making such a conveyance (*i.e.*, by mortgaging the property subsequent to the original sale to these defendants) it will be liable to the purchasers-defendants for their loss of bargain. This is computed as the market value of the land at the time of the breach with interest from the date of purchase less the original purchase price left unpaid. (NOTE: Subject to the terms of this contract, defendants must pay the full purchase price before they acquire title, thus the purchase price left unpaid would necessarily be zero, and defendants could recover full market value as of date of breach.) *Davis v. Beury,* 134 Va. 322, 340, 114 S.E. 773, 777-78 (1922); *Williams v. Snider,* 190 Va. 226, 230, 56 S.E. 2d 63, 65 (1949).

We hold that plaintiff's contractual obligation to execute a Special Warranty Deed upon purchasers' final installment payment provides sufficient mutuality of obligation to prevent the contract from being unconscionable.

We now turn to the question of whether or not the contract is supported by valid consideration. The contractual duty on the part of the plaintiff as seller to execute to the defendants as purchasers a Special Warranty Deed upon defendants' payment of the final installment provides sufficient consideration to constitute a valid contract under Virignia law. *Midkiff v. Glass*, 139 Va. 218, 223-24, 123 S.E. 329, 330 (1924) held that a promise of a seller to convey property in return for a promise by the buyer to pay the unpaid remainder of the purchase price furnishes a valid and sufficient consideration to hold buyer or his estate liable to pay the remainder of the purchase price.

[3]   Finally we turn to the question of whether or not this land sales contract is illusory in that there is no enforceable duty on the part of the plaintiff-vendor to actually convey the property to the defendants as purchasers. Defendants argue to this Court that paragarph 6 of the contract when combined with paragraph 12 noted *supra* renders the contract illusory. We do not agree. In its pertinent part paragraph 6 reads as follows:

> "Buyer agrees that in the event of prior sale of said lot(s), this agreement and note shall be cancelled and voided without further liability to either party, except for refund of all payments made hereunder . . . ."

We interpret the words "prior sale" in paragraph 6 of the contract to mean a contract to sell consummated, or a sale consummated, between the seller and another purchaser with reference to the same tract of land prior to the signing of the subject contract. These words, "prior sale", do not refer to a sale or contract to sell to another purchaser entered into after the time of signing the subject contract or at any time during which the subject contract is being complied with by the subject purchaser.

The reason for paragraph 6 being in the contract is readily apparent. The seller had eight or ten authorized salesmen on the premises of the development for the purpose of driving prospective purchasers through the development to select a lot or tract

suitable to the prospective purchaser. Obviously two or more pro-
spective purchasers, accompanied by different salesmen, may
select the same lot or tract. The salesman with any one prospec-
tive purchaser, easily might not be aware of the prior sale of a
particular lot or tract within a short span of time by another
salesman. Under these circumstances it is conceivable that the
same lot or tract could have been the subject of a prior sale
without a second salesman's knowledge, and the second salesman
in good faith might offer the lot for sale and execute a contract
with a second purchaser. Under such circumstances the "prior
sale" provided for in paragraph 6 of the contract would permit
the seller to refund whatever the second purchaser had paid upon
such second sale, or such second contract to sell, and to void the
contract and note. This is a reasonable arrangement for the pro-
tection of both the seller and the second would be purchaser. At
oral argument in this Court counsel for defendant conceded that
allowing a period to set a second sale aside in the event of the
above noted contingency was the practical application of
paragraph 6.

As so interpreted the provisions of paragraph 6 of the con-
tract do not render the agreement illusory.

All of the foregoing arguments were previously rejected by
the Court of Appeals in *Land Co. v. Wood,* 40 N.C. App. 133, 252
S.E. 2d 546 (1979). We find also that the land sale contract in this
case is valid under Virginia law and therefore we affirm the opin-
ion of the Court of Appeals.

Affirmed.

Justice CARLTON took no part in the consideration or decision
of this case.

Justice COPELAND dissenting.

I agree with the majority that the decision in this case turns
on application of the law of the Commonwealth of Virginia. Under
Virginia law,

" '[W]here the consideration for the promise of one party is
the promise of the other party, there must be absolute
mutuality of engagement, so that each party has the right to

hold the other to a positive agreement. Both parties must be bound, or neither is bound.' " *Capps v. Capps*, 216 Va. 378, 381, 219 S.E. 2d 901, 903 (1975), *quoting Town of Vinton v. City of Roanoke*, 195 Va. 881, 896, 80 S.E. 2d 608, 617 (1954); *American Agricultural Chemical Co. v. Kennedy*, 103 Va. 171, 176, 48 S.E. 868, 870 (1904).

Where a party suing to enforce a contract promise has given no consideration in exchange for that promise, there is no legally binding contract and the contract cannot be enforced. An illusory promise, being not a legally binding promise at all, is not sufficient consideration to make a contract mutually binding and enforceable. *Town of Vinton v. City of Roanoke, supra.* The point is well stated in Corbin on Contracts § 145 (1963):

"If what appears to be a promise is an illusion, there is no promise; like the mirage of the desert with its vision of flowing water which yet lets the traveller die of thirst, there is nothing there. By the phrase 'illusory promise' is meant words in promisory form that promise nothing; they do not purport to put any limitation on the freedom of the alleged promisor, but leave his future action subject to his own future will, just as it would have been had he said no words at all."

The majority holds that plaintiff-seller's promise to execute to the defendants as purchasers a Special Warranty Deed upon defendants' payment of the final installment of the purchase price provides sufficient consideration to constitute a valid contract under Virginia law citing *Midkiff v. Glass*, 139 Va. 218, 223-24, 123 S.E. 329, 330 (1924).

The case *sub judice* is distinguishable from *Midkiff* because of the additional paragraph present in the contract under consideration here which provides as follows:

"6. Buyer agrees that in the event of prior sale of said lot(s), this agreement and note shall be cancelled and voided without further liability to either party, except for refund of all payments made hereunder to Buyer, and to accept the decision of seller without recourse, that said prior sale of lot(s) has been made."

The question is whether the above paragraph makes the plaintiff-seller's promise to sell and to give a Special Warranty Deed after all installments have been paid, an illusory promise so that there is no consideration to support the defendant-buyers' promise to buy. If the seller's promise to sell is in reality an illusory promise, then the plaintiff cannot enforce this contract against the defendants because there are no *mutually binding promises* and as noted above, under Virginia law, *both parties must be bound or neither is bound. Capps v. Capps, supra.*

The issue is what is meant by "prior sale of said lot" in paragraph 6 of the contract. Seller-plaintiff urges and the majority decides that it means a sale of the lot prior to the sale of the same lot on the same date to the second buyers. This alleged interpretation is adopted because it is said that the company has many agents in different places selling these lots and a certain lot may be sold twice in the same day. In that event, the second buyer would get a refund of his down payment because of the prior sale.

The majority so construes this paragraph in order to avoid declaring the contract invalid. Even though maintaining the validity of the contract is a laudable goal, our function is to *interpret* the contract that the parties have written and not to rewrite the contract for them. A new contract cannot be written for the parties under the guise of construction nor can the contract be altered so as to conform it to the court's notion of the contract the parties should have made in view of the surrounding facts and circumstances. *Ames v. American National Bank of Portsmouth,* 163 Va. 1, 176 S.E. 204 (1934). There is no basis in the contract for the majority's construction. In fact, I believe that the majority's construction ignores the plain English that seller chose in composing paragraph 6. Words are to be given their ordinary meaning unless it is clearly shown a different meaning was intended, *id.,* and no such showing has been made in this case.

The buyer-defendants argued at the trial level, in the Court of Appeals and in this Court (through incorporation in its brief before this Court of its brief in the Court of Appeals) that prior sale means any sale prior to the payment of the last installment. In that event, seller, at the time this contract was entered into, made no binding promise to sell the lot to the defendants. In-

stead, the seller made only an illusory promise to sell the lot to the defendants *if* it did not sell to someone else before all installments were paid by the buyers. From the very words of the contract itself, I believe that this is the only correct interpretation of paragraph 6.

I am not unmindful of the rule of contract construction that states that words in promissory form should not be interpreted so as to make them illusory unless the context shows an intent to leave performance subject to the party's future will and desire. Corbin on Contracts § 546 (1963). From the context of paragraphs 4 and 6 of the contract, which the seller prepared, I believe that there is an objective manifestation by the seller of an intent to leave its performance subject to its future will and desire.

This contract was entered into on 5 May 1974 and on that date a $500.00 down payment was made. The first of the sixty installment payments of $135.25 was due over a month later on 19 June 1974. If the term "prior sale" in paragraph 6 was intended to mean a prior sale on the same day as the sale to the buyer-defendants, as the majority holds, then seller, who prepared this contract, should have provided that in the event of a prior sale the *down payment* would be refunded since that is the *sole* payment made on the day of the sale. Instead, seller provided for refund of all payments. The question then becomes, what did seller mean by "all payments"?

The contract must be construed as a whole. *State Farm Mutual Automobile Insurance Co. v. Justis*, 168 Va. 158, 190 S.E. 163 (1937). The intent of the parties must be gathered from the words they have used in the contract. *Ames v. American National Bank of Portsmouth, supra.* Paragraph 4 of this contract provides that,

> "Seller . . . agrees upon receipt of *all payments* provided herein . . . to record . . . and deliver a conveyance of said Lot(s) to Buyer consisting of a SPECIAL WARRANTY DEED. . . ." (Emphasis added.)

Certainly "all payments" in paragraph 4 means payment of the down payment *and all installment payments by the buyers.* In my view, the term "all payments" has exactly the same meaning in paragraph 6 that it has in paragraph 4 for the simple reason

that the term is used and defined in paragraph 4 and is then used again two paragraphs later in paragraph 6. The term "all payments" determines the true intended length of the time period for a possible "prior sale" as objectively manifested in the contract language construed as a whole. A "prior sale" could be made by the seller at any time prior to payment of the last installment by the buyers in which event seller would refund *all of the payments*. Therefore, seller made only an illusory promise and the contract is unenforceable. As stated in Corbin on Contracts § 145 (1963):

> "Such an illusory promise is neither enforceable against the one making it, nor is it operative as a consideration for a return promise. This is true even though the other promisor in fact bargains for a mere illusory promise in return and gets it."

This same issue was addressed by the Court of Appeals in *Tanglewood Land Co. v. Wood*, 40 N.C. App. 133, 252 S.E. 2d 546 (1979). There Judge (now Justice) Carlton concluded that buyer's argument (that paragraph 6 of the contract made seller's promise to sell merely an illusory promise) was without merit because the buyer could sue for breach of contract and obtain either specific performance or damages.

Before a party can successfully sue for breach of contract and obtain damages or specific performance, there must first be a valid and enforceable contract which has then been breached. When the only consideration to support a promise to buy is an illusory promise to sell, then no valid and enforceable contract has ever been entered into because an illusory promise is not sufficient consideration and sufficient consideration is a prerequisite to the *formation* of a contract. When a party argues that all it received as consideration for its promise was an illusory promise, then that party is asserting a defense to the *formation* of a contract and thus, the question of *breach* of that contract is never reached. In the case cited by the Court of Appeals in *Tanglewood Land Co. v. Wood, supra* in support of its holding on this point, *Davis v. Beury*, 134 Va. 322, 114 S.E. 773 (1922), there was a valid and enforceable contract between the parties which seller had breached and buyer brought suit for an appropriate remedy.

"If the promisor bargains for some sort of real promise, and receives only an illusion, *there is no contract* for the reason that the offer has not been accepted [by a binding promise to convey] as well as for the reason that there is no sufficient consideration." Corbin on Contracts § 145 (1963). (Emphasis added.)

Accordingly, I would hold that seller-plaintiff cannot enforce this contract against buyer-defendants because seller gave no binding promise to sell and convey a special warranty deed as consideration for buyers' promise to buy. Since seller made only an illusory promise, no valid contract was ever entered into and the agreement is unenforceable.

Justice HUSKINS joins in this dissenting opinion.