**KEY MOTORSPORTS, INC., Plaintiff,**

**v.**

**SPEEDVISION NETWORK, L.L.C. and Outdoor Life Network, L.L.C., Defendants.**

**No. 1:97CV00934.**

United States District Court, M.D. North Carolina.

Jan. 27, 1999.

Samuel A. Wilson, III, Charlotte, NC, for plaintiff.

Irving M. Brenner, Charlotte, NC, Burt A. Braverman, Washington, DC, for defendant.

### MEMORANDUM OPINION

TILLEY, District Judge.

Defendants Speedvision Network, L.L.C. and Outdoor Life Network, L.L.C. ("Defendants") have moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue. The Defendants' motion is based upon a forum selection clause contained in the contract that is the subject of

this lawsuit. For the reasons set forth below, the Defendants' motion is GRANTED.

### I.

Plaintiff Key Motorsports ("Key") is a Virginia corporation with its principal place of business in Rowan County, North Carolina. According to the Complaint, the Defendants are both limited liability Delaware corporations, with offices for transaction of business located in Stamford, Connecticut. (Compl. [Doc. # 1] ¶ 2.)

In October 1996, Key and the Defendants entered into a Sponsorship Agreement ("Agreement").[1] The parties met together in North Carolina to negotiate their partnership, and then over the course of several weeks exchanged drafts of a written contract explicating the terms of their Agreement. Finally, an officer of Key signed the Agreement in North Carolina on October 16, 1996, and sent it to the Defendants. A representative of the Defendants signed the Agreement on October 17, 1996 in the Defendants' offices in Connecticut.

Paragraph 17(b) of the Agreement states: "This Agreement and any controversies arising hereunder shall be interpreted and adjudicated in accordance with the internal laws of the state of New York, whose courts shall have exclusive jurisdiction thereof." (Agreement, at 10.)

On September 7, 1997, Key filed a Complaint in this Court alleging breach of this Agreement. Subject matter jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332, as the action is between citizens of different states and the amount in controversy exceeds $75,000.[2] The case appears to satisfy the venue requirements of 28 U.S.C. § 1391(a)(2), as Key has alleged

that the "majority of the services rendered by the plaintiff under the Contract were rendered at its place of business in Rowan County, North Carolina." (Compl. [Doc. # 1] ¶ 7.) Moreover, Key's auto racing team, which was the subject of the Agreement, was based in Rowan County, and the Agreement was negotiated, at least in part, in Rowan County. Therefore, "a substantial part of the events or omission giving rise to the claim occurred" in this District. *See* 28 U.S.C. § 1391(a)(2).

However, on October 29, 1997, the Defendants filed a Motion to Dismiss for improper venue, pursuant to Fed.R.Civ.P. 12(b)(3). The Motion is based on the "forum-selection" clause in Paragraph 17(b) of the Agreement.

### II.

Normally, the first step in this analysis would be to decide whether federal or state law should be used to determine the validity of the forum-selection clause in Paragraph 17(b) of the Agreement. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that federal district courts sitting in diversity jurisdiction should apply state law to substantive issues, and federal law to procedural issues). However, in this case it is unnecessary to decide this complicated and contentious issue. As discussed below, under the choice-of-law rules of North Carolina, if state law were applied, the state law of either New York or Connecticut would be the proper law to apply to the forum-selection clause. Both New York law and Connecticut law apply the same standard for analyzing forum-selection clauses as the federal standard set out in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32

---

1. A copy of the Agreement is attached to the Complaint. (*See* Compl. [Doc. # 1], Ex. A.)

2. Key stated in the Complaint that the amount in controversy "exceeds $ 50,000 exclusive of interest and costs." (Compl. [Doc. # 1] ¶ 12.) While this statement alone does not meet the relatively new $75,000 requirement

of 28 U.S.C. § 1332, Key also specifically demands a judgment in its favor for $211,609.17 with interest. (*Id.* at 6.) Therefore, the amount in controversy requirement is satisfied despite the statement in Paragraph 12 of the Complaint.

L.Ed.2d 513 (1972). Therefore, it is necessary only to determine the validity of the forum-selection clause in Paragraph 17(b) of the Agreement according to the *Bremen* standard. *See Lambert v. Kysar,* 983 F.2d 1110, 1116 (1st Cir.1993) (not determining *Erie* question because of similarity of state and federal standards); *Sterling Forest Assoc., Ltd. v. Barnett–Range Corp.,* 840 F.2d 249, 251 (4th Cir.1988) (declining to decide whether the clause was procedural or substantive because federal law and the applicable state law were the same), *overruled on other grounds by Lauro Lines v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989).

If forum-selection clauses demand the application of state substantive laws, as a federal court sitting in diversity, this Court would apply North Carolina's choice-of-law rules to determine which state's substantive law is applicable. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

▉ Under North Carolina's choice-of-law rules, the interpretation of a contract is governed by the law of the place where the contract was made. *Tanglewood Land Co. v. Byrd,* 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). However, if the parties to the contract have agreed that a given jurisdiction's substantive law will govern the interpretation of the contract, then a North Carolina court will give effect to that contractual provision. *Id.* In Paragraph 17(b) of the Agreement, the parties agreed to apply the law of New York to disputes arising from the contract. There-

fore, under North Carolina's choice-of-law rules, the law of New York would normally be used to interpret the forum-selection clause. *See id.*

Yet, in limited circumstances, North Carolina courts will ignore the parties' choice of law and instead apply the law of the place where the contract is made. Key asks this Court to follow this policy because it claims that the choice of New York as a forum is unreasonable. Although *Tanglewood* does not specifically require any relationship between the chosen jurisdiction and the contracting parties,[3] it would appear that North Carolina courts would require some connection between them. In *Bundy v. Commercial Credit Co.,* 200 N.C. 511, 157 S.E. 860 (1931), the North Carolina Supreme Court refused to apply the parties' choice of Delaware law because the court found that their contractual stipulation was "immaterial": "the record [did] not disclose that any transaction took place in Delaware or that the parties even contemplated either the making or the performance of the contract in said state." *Id.* at 863. The Restatement (Second) of Conflict of Laws, § 187, which has been cited with approval by the North Carolina Court of Appeals[4] and by the Fourth Circuit,[5] follows a similar rule by providing an exception that the agreed upon law will not be applied if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice."[6] Restatement (Second) of Conflict of Laws, § 187(2)(b) (1971).

---

**3.** The relationship was clear in *Tanglewood:* the contract stated that Virginia law would apply, the contract was executed in Virginia, the land at issue was located in Virginia, and the plaintiff was a Virginia corporation. *See Tanglewood,* 299 N.C. at 260–62, 261 S.E.2d at 655–56.

**4.** *See Behr v. Behr,* 46 N.C.App. 694, 696, 266 S.E.2d 393, 394 (1980).

**5.** *See Broadway & Seymour, Inc. v. Wyatt,* No. 91–2345, 1991 WL 179084 (4th Cir. Oct. 28, 1991) (unpublished disposition).

**6.** Another exception in the Restatement where the chosen law will not be applied is if the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws, § 187(2)(b) (1971). This exception is inapplicable because, as discussed below, the "state of the applicable law" if no choice-of-law provision existed

If the choice of New York were found to be unreasonable because of a lack of connection to the parties and to the performance of the Agreement, the law of Connecticut would apply because that is where the contract was made. In North Carolina,

> it is a generally accepted principle that the test of the place of a contract is as to the place at which the last act was done by either of the parties essential to a meeting of minds. Until this act was done there was no contract, and upon its being done at a given place, the contract became existent at the place where the act was done. Until then there was no contract.

*Fast v. Gulley*, 271 N.C. 208, 212, 155 S.E.2d 507, 510 (1967) (quoting *Bundy*, 157 S.E. at 863) (internal quotation marks omitted) (citations omitted). Key disputes the conclusion that Connecticut law would be applicable, because it claims that an oral agreement was reached when all of the parties met in North Carolina together, before the written contract was signed by the parties. This argument is supported by the first of a series a letters sent to Mr. Key from Roger Werner, President of the Defendants, that "confirm[s]" the Defendants' commitment to Key to provide primary sponsorship in the amount of "$700K." (Mem. Opp'n Defs.' Mot. Dismiss [Doc. # 10], Ex. A, Bates 001.) In other words, Key asserts that the parties intended to bind themselves with an oral agreement, and later memorialize their agreement with a written contract.

However, most of the circumstantial evidence surrounding the formation of this Agreement supports the opposite conclusion: that the parties—or at least the Defendants—did not intend to be bound until they signed a written contract explicating the various terms and conditions of the agreement. First, in the same letter mentioned above, the Defendants state that they are "working up a formal contract based on the document" Key gave them. (*Id.*) Second, in a follow-up letter written nine days later on October 10, 1996, Fredric E. Epstein, Vice President of Business and Legal Affairs, and General Counsel for the Defendants, attached a "blacklined version of the first draft" and mentioned that one item remained open for negotiation—"the cost of decals and paint for the hauler." (Mem. Opp'n Defs.' Mot. Dismiss [Doc. # 10], Ex. A, Bates 002.) In that letter, Mr. Epstein also requested that Mr. Key call him "with any proposed changes" so that they could "work towards a final draft of the agreement." (*Id.*) Finally, on October 15, 1996, Mr. Epstein sent Mr. Key four "clean" original agreements. (Mem. Opp'n Defs.' Mot. Dismiss [Doc. # 10], Ex. A, Bates 003.) Mr. Epstein requested that Mr. Key "execute all four" and send them back to him, whereupon Mr. Epstein would "return one counter executed copy to [Key] along with a check for the amount of $150,000." (*Id.*) Mr. Key executed the Agreement on October 16, 1996 in North Carolina, and Roger Williams executed it on October 17, 1996 in Connecticut.

A contract is not made until there is mutuality of agreement:

> [t]here must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement.

*Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 108 S.E. 735 (1921). Moreover, "if it appears that the parties are merely negotiating to see if they can agree upon terms, and that the writing is to be the contract, then there is no contract until the writing is executed." *Elks v. North State Life Ins. Co.*, 159 N.C. 619, 75 S.E. 808 (1912). The

would be Connecticut, and forum-selection clauses are accepted by Connecticut. *See* cases cited *supra*.

exchange of letters between the parties here indicates that issues remained open for negotiation after the North Carolina meeting. Additionally, the final letter of October 15 indicates that the Defendants did not intend to be bound until they executed the agreement, at which point they would send the first payment relating to the Agreement to Key. *See id.* ("If [a party] neither had nor signified ... an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed." (quoting *Mississippi & Dominion Steamship Co. v. Swift*, 86 Me. 248, 29 A. 1063 (1894))). The Defendants' signature, then, was "the last act ... done by either of the parties essential to a meeting of minds." *Fast*, 271 N.C. at 212, 155 S.E.2d at 510. Because that act took place in Connecticut, if the Agreement's choice-of-law provision were not enforced, then Connecticut law would be applied to the forum-selection clause. *Bundy*, 157 S.E. at 863.

Ultimately, though, this Court does not need to decide which law—New York's or Connecticut's—applies, for they both would apply the federal standard described by *Bremen* to analyze the validity of the forum-selection clause. *See Total Telecomms., Inc. v. Target Telecom, Inc.*, No. CV 96053516S, 1997 WL 133404, at *3 (Conn.Super. March 11, 1997) (noting that Connecticut's appellate courts had not decided the issue of the validity of forum-selection clauses directly, but holding that, based on *Bremen*, Connecticut "appellate courts will follow the so-called 'modern view' toward these forum clauses in contracts"); *Eaton Fin. Corp. v. Grant Bros. Fuel Oil, Inc.*, No. CV93–0347890, 1994 WL 14525, at *1–2 (Conn.Super. Jan. 12, 1994) (same); *Price v. Brown Group. Inc.*, 619 N.Y.S.2d 414, 416, 206 A.D.2d 195, 198 (1994); *DiRuocco . v. Flamingo Beach Hotel & Casino, Inc.*, 557 N.Y.S.2d 140, 141, 163 A.D.2d 270, 271 (1990).

In *Bremen*, the Supreme Court concluded that, under federal common-law, forum-selection clauses are *prima facie* valid, and should be enforced unless the resisting party shows "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." 407 U.S. at 15, 92 S.Ct. 1907. There has been no evidence to suggest fraud or overreaching in the inclusion of the forum-selection clause in the Agreement, and Key has made no complaint of such. Rather, this Agreement was negotiated over the course of several weeks, between two business entities. Therefore, the question is whether enforcing the forum-selection clause would be "unreasonable and unjust." *Id.*

■ The party seeking to void the clause should "clearly show that enforcement would be unreasonable and unjust." *Id.; Nizam's Inst. of Med. Sciences v. Exchange Tech., Inc.*, No. 93–2196, 1994 WL 319187, at *3 (4th Cir.1994) (unpublished disposition). One aspect of this standard is whether the choice of forum is "inconvenient." *Mercury Coal & Coke. Inc. v. Mannesmann Pipe & Steel Corp.*, 696 F.2d 315, 317 (4th Cir.1982). Here, the choice of New York in the Agreement does not meet the standard necessary to be deemed "inconvenient." The party challenging the clause must demonstrate "that the specified forum is so 'seriously inconvenient,' that he would be deprived of an opportunity to participate in the adjudication." *Id.* (quoting *Gaskin v. Stumm Handel GmbH*, 390 F.Supp. 361, 365 (S.D.N.Y.1975)). While New York may be a more distant forum for Key than North Carolina, distance and expense are not the yard-sticks of inconvenience in an Agreement that is freely negotiated such as this one: "[w]hatever 'inconvenience' [Key] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting." *Bremen*, 407 U.S. at 17–18, 92 S.Ct. 1907. Rather, a forum-selection clause should be invalidated on the

grounds of inconvenience "only if enforcement would effectively deprive [a] party of his day in court." *Id.* at 18, 92 S.Ct. 1907. Key has made no such showing of "grave" or "serious" inconvenience here. *See id.*

In addition to "inconvenience," "[f]orum selection clauses have been found to be 'unreasonable' and therefore have not been enforced when the selected forum is one with which neither party to the contract had a connection." *Medical Legal Consulting Serv., Inc. v. Covarrubias,* 648 F.Supp. 153, 157 (D.Md.1986) (citing Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3803 n. 24 at 23–24 (1986)). Moreover, "a strong public policy of the forum ... might result in invalidation." *Mercury Coal & Coke,* 696 F.2d at 317 (citing *Bremen,* 407 U.S. at 15, 92 S.Ct. 1907). Neither of these factors prohibits enforcement of the forum-selection clause in this case. First, although Key asserts that it never knew of any connection the Defendants may have had with New York and that it never dealt with the Defendants in New York, the Defendants have submitted an affidavit from Shari Leventhal, Speedvision Networks' Marketing Director, which states that Networks maintains a business office in New York, that most of its advertising sales efforts are based in this New York office, and that much of Networks' preparation for this Agreement was done in New York, with a New York law firm.[7] (Mem. Points & Auth.Supp. Defs' Mot. Dismiss [Doc. # 8], Ex. A, Leventhal Aff., ¶¶ 3, 4, 5.) Also, Key asserts that its contacts with the Defendants all occurred in their Stamford, Connecticut offices and in North Carolina; however, it should be noted that Stamford, Connecticut sits near the border of Connecticut and New York—a fact that strengthens the argument that choosing New York as a forum for disputes was "reasonable." Key may not have had much, or any, connection to New York, but all that is required for a freely-negotiated forum-selection clause to be reasonable is that *one* of the parties to the Agreement have a connection to their contractual choice of forum. *See Medical Legal Consulting Serv.,* 648 F.Supp. at 157. The Defendants clearly have that connection to New York, and, after they have freely negotiated for the right to demand suit in New York, it would not be appropriate for this Court to upset the balance of their bargain.

Second, enforcing the forum-selection clause of this Agreement would not contravene the public policy of North Carolina. While North Carolina has a statute that prohibits forum-selection clauses, this provision is limited to contracts "entered into in North Carolina." N.C.Gen.Stat. § 22B–3 (1996). As discussed above, this Agreement was "made" in Connecticut; therefore, it was not "entered into" in North Carolina and does not contravene the public policy enunciated in N.C.Gen.Stat. § 22B–3.

## III.

For the reasons stated above, the forum-selection clause in Paragraph 17(b) of the Agreement between these parties is enforceable. Therefore, the Defendants' Motion to Dismiss is GRANTED, and this case will be DISMISSED WITHOUT PREJUDICE.

---

7. Parts of Ms. Leventhal's affidavit are disputed by Key; however, the points made above are not contradicted by Key's evidence.