RHÔNE–POULENC AGRO
S.A., Plaintiff,

v.

MONSANTO COMPANY and Dekalb
Genetics Corp., Defendants.

No. 1:97CV1138.

United States District Court,
M.D. North Carolina.

April 23, 1999.

Michael E. Ray, Winston–Salem, NC, Timothy G. Barber, Charlotte, NC, John F. Morrow, Winston–Salem, NC, Richard D. Levin, Wilmington, DE, for plaintiff.

James Donald Cowan, Jr., Greensboro, NC, Robert N. Sayler, Washington, DC, John F. Lynch, Houston, TX, Daniel W. Fouts, Greensboro, NC, W. Winburne King, III, Greensboro, NC, for defendants.

## MEMORANDUM ORDER

TILLEY, District Judge.

This Order addresses the choice of law to be applied to Plaintiff Rhône–Poulenc Agro S.A.'s ("RPA") claims under Count IV of its Complaint. In the Court's April 1, 1999 Memorandum Opinion and Order denying summary judgment on these claims, the Court delayed determining the precise law to be applied. (*See* Mem. Op. [Doc. # 327], at 19.) As neither party fully addressed the issue in their summary judgment briefs, it was discussed at a hearing held on April 6, 1999. Furthermore, both parties submitted extensive briefs on the matter. (*See* RPA's Mem. [Doc. # 345]; Def.'s Mem. [Doc. # 346].)

In Count IV, RPA requests rescission of an agreement it made with Defendant De-Kalb Genetics Corporation ("DeKalb") in December 1994.[1] After eight days of trial on this matter, it is clear that four theories remain for the jury to consider: (1) whether DeKalb engaged in actual fraud through partial misrepresentations; (2) whether DeKalb breached the 1985 and 1991 agreements it made with RPA by not disclosing the results of the 1994 field tests; and, by not making those same disclosures, whether DeKalb breached (3) an oral contract or (4) an implied contract.

■ In determining choice of law issues, a federal court sitting in diversity must apply the substantive law of the forum state, North Carolina. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

1. The facts are set out in the Court's April 1, 1999 Memorandum Opinion. (*See* Mem. Op. [Doc. # 327], at 3–7.)

For the reasons set forth below, North Carolina's choice of law rules require the Court to apply North Carolina law to the first claim, Illinois law to the second claim, and Connecticut law to the third and fourth claims.

■ RPA's first claim is for fraud, which is a tort. The Supreme Court of North Carolina consistently has applied the lex loci delicti doctrine to actions sounding in tort. *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988). That doctrine requires that the law of the "place of the wrong" controls; and the place of the wrong is the locale in which "the last event necessary to make a defendant liable for an alleged tort occurs." *Brendle v. General Tire & Rubber Co.*, 408 F.2d 116, 117 n. 3 (4th Cir.1969) (quoting *Restatement of Conflict of Laws* § 377 (1934)) (internal quotation marks omitted). In a fraud claim, because the "last event" is the injury to the plaintiff, *Steele v. Ellis*, 961 F.Supp. 1458, 1463 (D.Kan.1997), "the place of the wrong is where the loss is sustained, not where fraudulent representations are made." *Restatement of Conflict of Laws* § 377 n. 4 (1934), *quoted in Jordan v. Shaw Indus., Inc.*, 131 F.3d 134, 1997 WL 734029, at *3 (4th Cir. Nov. 26, 1997) (unpublished disposition).[2] Other federal courts that have examined the application of the lex loci delicti rule to fraud claims consistently have concluded that the state where the injury occurred in a fraud claim is the state in which the plaintiff suffered the economic impact. *See, e.g., Glass v. Southern Wrecker Sales*, 990 F.Supp. 1344, 1348

(M.D.Ala.1998) (holding that injury suffered from fraud occurred in the state in which the plaintiff's place of business was located, rather than the state in which the plaintiff purchased a truck based on the defendant's misrepresentations); *Management Science America, Inc. v. NCR Corp.*, 765 F.Supp. 738, 740 (N.D.Ga.1991).

RPA suffered injury from the alleged fraudulent misrepresentations in both North Carolina, where its North America headquarters are located, and in France, where its worldwide headquarters are located. However, between these two locales, North Carolina's law seems to be the more appropriate law to apply. First, RPA is the party in this case—not its parent company located in France. Second, RPA's principal negotiator for the 1994 Agreement was Scott Johnson, who was located in North Carolina.[3] Third, and most practically, until the Court raised the issue on the eve of trial, neither party asserted that any law other than North Carolina or Illinois law applied to this controversy. Clearly Illinois law does not apply to the fraud claim, as RPA suffered no injury in that state. Moreover, "[t]he party seeking to have the law of a foreign jurisdiction apply has the burden of bringing such law to the attention of the court." *Leonard v. Johns–Manville Sales Corp.*, 309 N.C. 91, 95, 305 S.E.2d 528, 531 (1983). Therefore, as neither party has advocated for, nor supported the application of, French law, North Carolina law is more applicable law to the fraud claim.

■ RPA's second claim is for breach of the 1991 Assignment and Assumption

**2.** The Fourth Circuit, in its unpublished *Jordan* opinion, states that "[t]he 'last act' necessary for a fraud claim is the reasonable reliance on the false representation which causes the injury." *Jordan*, 1997 WL 734029, at *3. In this matter, this Court does not see any practical difference between the location of the "reasonable reliance" and the location of the "injury." However, it does note that the Fourth Circuit in *Jordan* relied on an Illinois definition of fraud in which the "reasonable reliance" and "injury" elements were conflated into one element. In North Carolina, these are two separate elements, which means

that the injury to the plaintiff is technically the "last event" required to make a defendant liable. *See Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988). In North Carolina, a plaintiff's reasonable reliance on a defendant's misrepresentation will not make the defendant liable, unless that reliance also causes injury to the plaintiff.

**3.** It should be noted that final approval of the 1994 Agreement was given by corporate officers in France, and the agreement was signed by Alain Godard in France.

Agreement, which incorporated the terms of a 1985 Agreement between Calgene, Inc. and DeKalb. Under North Carolina's choice of law rules, the interpretation of a contract is governed by the law of the place where the contract was made. *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). However, if the parties to the contract have agreed that a given jurisdiction's substantive law will govern the interpretation of the contract, then a North Carolina court will give effect to that contractual provision. *Id.* In Paragraph 8.9 of the 1985 agreement, the parties agreed to apply the law of Illinois to disputes arising from the contract. Therefore, under North Carolina's choice of law rules, the law of Illinois will be used to interpret the 1985 and 1991 agreements.

■ The third and fourth claims by RPA are for breach of either an oral or an implied agreement relating to the transfer of the EPSPS construct. Again, under North Carolina's choice of law rules, the interpretation of a contract is governed by the law of the place where the contract was made. *Id.* Any agreement to provide results from testing the EPSPS construct was completed at one of two times: either orally at a November 2, 1992 meeting in Mystic, Connecticut, or implicitly when DeKalb accepted the EPSPS construct at its laboratory in Mystic, Connecticut. Under either scenario, the contract would have been completed in Connecticut. Therefore, Connecticut law will apply to the determination of whether an oral or implied contract between RPA and DeKalb was breached by DeKalb.

In conclusion, North Carolina law will apply to RPA's first claim for fraud, Illinois law will apply to RPA's second claim for breach of the 1985 and 1991 agreements, and Connecticut law will apply to RPA's third and fourth claims for breach of an oral or implied contract.